UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| FATARA MUHAMMAD, AHMAD MUHAMMAD, JAMES MUHAMMAD, AUTUMN INGRAM, BADIA MUHAMMAD, CURTIS JAMISON, LATEEF MUHAMMAD, MARCUS JACKSON, PATRICIA MCDONALD, SERIGNE SALIOU FAYE, KENNETH DOUGLAS, SALIH QAWI, GEORGE TRENT, STUART TANNER, on behalf of themselves and others similarly situated,<br><br>Plaintiff,<br><br>- against -<br><br>FERTITTA ENTERTAINMENT, INC.; LANDRY'S INC., MCCORMICK & SCHMICK RESTAURANT CORP., d/b/a MASTRO'S STEAKHOUSE, EVEN PAR LLC, MASTRO'S RESTAURANTS, LLC, MASTRO'S HOUSTON LLC, TILMAN J. FERTITTA, STEVEN LEE SCHEINTHAL, RICHARD HOLDEN LIEM, or any other related individual or entity,<br><br>Defendants. | **Case No.: 4:23-cv-493**<br><br>**AMENDED COLLECTIVE & CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff Ahmad Muhammad, James Muhammad, Fatara Muhammad, Autumn Ingram Badia Muhammad, Curtis Jamison, Lateef Muhammad, Marcus Jackson, Patricia McDonald, Serigne Saliou Faye, Kenneth Douglas, Salih Qawi, George Trent, Stuart Tanner on behalf of themselves and others similarly situated by their attorneys Leeds Brown Law, P.C. and Edwards Law Group, alleges upon knowledge to themself and upon information and belief as to all other matters as follows:

## PRELIMINARY STATEMENT

1.      This action is brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 203, 206, and 216(b), New York Labor Law Article 19 § 663 *et seq.*, 12 NYCRR 146

("NY Hospitality Wage Order"), Arizona Revised Statutes 23**,** Florida Statue Title XXXI Chapter §448**,** Code of the District of Columbia Title 32, Chapter 10 § 32-1003 and §32‑1010**,** Massachusetts General Law Title 21 Chapter 151,  and other supporting state wage and hour laws to recover, *inter alia*, unpaid minimum wages, overtime wages, wages and other unpaid amounts owed to Plaintiffs from Fertitta Entertainment Inc.; Landry's Inc.; McCormick & Schmick Restaurant Corp., d/b/a Mastro's Steakhouse; Even Par LLC; Mastro's Restaurants, LLC; Mastro's Houston LLC; Tilman J. Fertitta; Steven Lee Scheinthal; Richard Holden Liem; or any other related individual or entity ("Defendants") as part of their Mastro's brand of restaurants and steakhouses (collectively referred to as "Mastro's").

2.      Upon information and belief, Defendants Fertitta Entertainment Inc, Landry's Inc., Tilman J. Fertitta, Steven Lee Scheinthal, and Richard Holden Liem manage, control, own, and operate a number of restaurant locations throughout the United States as part of the same Mastro's Restaurants enterprise, under the same corporate entities, under the same management, under the same policies and practices, and under the same brand name.

3.      Plaintiffs worked at several of Defendants' locations including the Mastro's in Arizona, Texas, Florida, Washington D.C., Boston, and New York. However, Plaintiffs did not receive paystubs or any payment of wages with documentation, so the exact corporate entity and structure are not known to Plaintiffs.

4.      Beginning in July 2016 and continuing through the present, Defendants have maintained a policy and practice of failing to pay any wages to Plaintiffs, who were employed as bathroom attendants.

5.      For a majority of the Plaintiffs' employment as bathroom attendants they would

2

perform work at Defendants' restaurants, be directed or controlled by Defendants' agents, and failed to receive any wage payments whatsoever for the work they performed on behalf of Defendants. Instead, they were paid entirely in tips left by customers.

6.     Upon information and belief, similarly situated individuals, including bathroom attendants at Defendants' Mastro's locations, were subject to the same degree of control by Defendants and its agents, and the same pay practices.

7.     Defendants' payment practices violate the FLSA, New York wage laws, Florida wage laws, Arizona wage laws, D.C. wage laws, Massachusetts wage laws, and similar wage statutes.

8.     Plaintiffs have initiated this action seeking all compensation, including unpaid minimum wages and overtime under the FLSA and unpaid minimum wages, overtime, improper pay stubs and wage notices, and failure to pay wages and illegal deductions pursuant to the New York Labor Law and supporting regulations, which they were deprived of, plus interest, damages, attorneys' fees, and costs.

9.     Plaintiffs have also initiated this action under the various wage and hour statutes governing the payment of wages including minimum wage and overtime wages in the various states and localities in which Plaintiffs performed work, including Florida, Arizona, Texas, Massachusetts, and New York.

## THE PARTIES

10.     Plaintiff James Muhammad is an individual who is a resident of Houston, Texas, and was employed by Defendants for over 28 years at Defendants' Mastro's locations in Florida,

3

Arizona, Texas, and New York as a bathroom attendant. Plaintiff James Muhammad was never paid any wages for his work at Mastro's.

11.     Plaintiff James Muhammad was typically directed by numerous managers and other employees or agents of Defendants, including Christopher Gerkin, Hannie Darwazeh, Patrtick K. Barrett, Roman Kettler, Greg Perna, Kathleen, Luis, and Will.

12.     For example, Chris Gerkin, the Regional Director of the Mastro's location in Chicago, Houston, Boston, New York, Washington D.C. and Fort Lauderdale, directed Plaintiff James Muhammad that individual bathroom attendants were not performing their job to Mastro's standards and needed to be reprimanded and directed what time bathroom attendants should arrive.

13.     Mr. Gerkin also directed Plaintiff James Muhammad as to how he should hire and onboard bathroom attendants for Mastro's.

14.     Kathleen, a manager at the Ft. Lauderdale (Florida) Mastro's location directed Plaintiff James Muhammad and other bathroom attendants as to the dress code, scheduling, and how they interacted with customers.

15.     Roman Kettler, a manager at the North Scottsdale (Arizona) Mastro's location, directed Plaintiff James Muhammad and other bathroom attendants on how to perform their job duties and the required attire, including requiring bathroom attendants to send pictures of attire before coming to work. Mr. Kettler also made decisions as to bathroom attendants who should be fired or terminated.

16.     Hannie Darwazeh, the Regional Director of the Arizona Mastro's locations, directed Plaintiff James Muhammad about what attire was acceptable for bathroom attendants to

wear and set the hours of the bathroom attendants.

17.     Plaintiff Fatara Muhammad is a resident of Greensboro, North Carolina, and has been employed by Defendants at Mastro's since approximately September of 2017 as a bathroom attendant. Plaintiff Fatara was assigned to work at Mastro's locations in Ft. Lauderdale, Florida, New York, New York, and Houston Texas.

18.     Plaintiff Fatara typically worked from 4:30pm through 11:30pm or 12:00 am depending on the day of the week. Plaintiff Fatara worked at the Ft. Lauderdale, Florida location from July 2018 through September 2018 and January 2020 through February 2020. At the Ft. Lauderdale location Plaintiff Fatara typically worked 3 days a week or between 21 and 22.5 hours per week. Plaintiff Fatara worked at the Houston, Texas location from December 2017 through January 2018, August 2020 through September 2020, and December 2021 through January 2022. At the Houston Mastro's, Plaintiff Fatara typically worked 4 days a week or between 28 and 31.5 hours per week. Plaintiff Fatara worked at the New York, New York location from September 2017 through December 2017, and September 2019 through October 2019. At the New York location Plaintiff Fatara typically worked seven days a week or between 49 and 52.5 hours per week. Plaintiff Fatara was never paid any wages for her work at Mastro's, except for tips left by customers. Throughout her employment Plaintiff Fatara was under the direction and control of Defendants and their agents.

19.     Plaintiff Ahmad Muhammad is a resident of Phoenix, Arizona, and was employed by Defendants at Mastro's from 2011 through February of 2022 as a bathroom attendant. Plaintiff Ahmad worked at the Mastro's location in Arizona, including the Mastro's Steakhouse, the Ocean Club, and City Hall. Plaintiff Ahmad typically worked five to six days per week between 30-36

5

hours per week. Plaintiff Ahmad recalls being directed by Mastro's employees or agents on how to perform his duties, including Roman, Phil, and Rudy who were Mastro's employees at the Phoenix Steakhouse, as well as Phil and Javier who were managers at the Ocean Club. Plaintiff Ahmad was never paid any wages for the work he performed at Mastro's, except for tips left by customers.

20.     Plaintiff Ingram is a resident of Texas and was employed by Defendants at Mastro's from approximately January 2022 through March 2022, as a bathroom attendant. Plaintiff Ingram worked at the Mastro's location in Woodlands, Texas as well as one shift at the Houston, Texas location. Plaintiff Ingram typically worked Monday through Friday beginning her shift around 5:00 pm and ending her shift anywhere form 9:00 pm to 12:00 am. Plaintiff Ingram typically worked between 20 hours and 34 hours per week. Plaintiff Ingram recalls being hired, and her job performance being directed by a Mastro's employee Ms. Ashton. Plaintiff Ingram was fired by Ms. Ashton in March of 2022. Plaintiff Ingram was never paid any wages for the work she performed at Mastro's, except for tips left by customers.

21.     Plaintiff Badia Muhammad was employed by Defendants at various Mastro's locations, as a bathroom attendant, on and off from approximately 2017 through 2020. Plaintiff Badia worked the Mastro's locations in New York, New York, Houston, Texas, and Fort Lauderdale, Florida. Plaintiff Badia was never paid any wages for the work she performed at Mastro's except for tips left by customers.

22.     Plaintiff Badia worked at the New York, New York location form September 2017 through December 2017 and September 2019 through November 2019. At the New York location Plaintiff Badia typically worked seven days a week from approximately 5:00pm through 11:30pm

6

or 45.5 hours per week. At the New York location Plaintiff Badia recalls managers Rob, Greg, and Jetnir typically directing the means and methods of performing her work.

23.     Plaintiff Badia worked at the Fort Lauderdale, Florida Mastro's location from January 2020 through February 2020. Plaintiff Badia typically worked at the Florida location four days a week from approximately 5:00pm through 11:00pm or 24 hours per week. Plaintiff Badia recalls Mastro's manager Nicole directing the means and method of her job duties.

24.     Plaintiff Curtis Jamison was employed by Defendants at various Mastro's locations, as a bathroom attendant from approximately 2019 through 2022. Plaintiff Jamison was employed at the New York, New York and Scottsdale Ocean Club location. Plaintiff Jamison was never paid any wages by Defendants for the work he performed at Defendants restaurants. Plaintiff Jamison only received tips left by customers.

25.     Plaintiff Jamison worked at the New York location from approximately January 2019 through December 2019. At the New York location Plaintiff Jamison typically worked 5 days a week from approximately 5:00pm to 11:00pm or approximately 30 hours per week. Plaintiff Jamison worked at the Mastro's Ocean Club in Scottsdale, Arizona from approximately January 2020 through May 2022. Plaintiff Jamison typically worked 5 day per week from approximately 5:00pm to 11:00pm or 30 hours per week. Plaintiff Jamison recalls Mastro's employee Nick, who was a manager at the Ocean Club Scottsdale, typically directing his work.

26.     Plaintiff Lateef Muhammad was employed by Defendants at the Arizona Mastro's locations as a bathroom attendant. Plaintiff worked at the Mastro's locations known as Mastro's City Hall, Mastro's Ocean Club Scottsdale, and Mastro's Steakhouse. Plaintiff Lateef was employed from approximately 2014 through 2020. Plaintiff Lateef typically worked three days a

week from approximately 5:45pm to 10pm or approximately 12.75 hours a week. Plaintiff Lateef recalls Mastro's Steakhouse manager Jeff directing her job duties. Plaintiff Lateef was never paid any wages from Defendants for the work she performed. Plaintiff Lateef only received tips left by customers.

27.     Plaintiff Marcus Jackson was employed by Defendants at various Mastro's location from approximately 2013 through 2021, as a bathroom attendant. Plaintiff Jackson worked at the New York, New York, Fort Lauderdale, Florida, and Houston, Texas locations. Plaintiff Jackson was never paid any wages from Defendants for the work he performed. Plaintiff Jackson only received tips left by customers.

28.     Plaintiff Jackson worked at the New York, New York location from approximately March 2017 through January 2018 & April 2018 through April 2019. Plaintiff Jackson typically worked seven days a week from approximately 4:30pm to 11:30pm or about 49 hours per week. Plaintiff recalls Mastro's manager Vladimir directing the work he performed at the New York location. Plaintiff Jackson worked at the Florida location for parts of 2019 and the Houston location from approximately March 2020 through February 2021. At the Florida and Houston locations Plaintiff Jackson typically worked 5 days a week from 4:30pm through 11:30pm or approximately 35 hours per week. Plaintiff Jackson recalls a Mastro's manager Nick who worked at the Houston location that directed his performance.

29.     Plaintiff Patricia McDonald is a resident of Phoenix, Arizona and was employed by Defendants at the Mastro's Ocean Club and Steakhouse in Scottsdale, Arizona, as a bathroom attendant. Plaintiff McDonald was employed by Defendants from approximately 2009 through May 2022. Plaintiff McDonald was never paid any wages from Defendants for the work she

performed. Plaintiff McDonald only ever received tips left by customers.

30.     Plaintiff McDonald typically worked seven days a week prior to March 2020 and typically worked three days per week after March 2020. Plaintiff McDonald typically arrived at Defendant's restaurants around 6:00pm and left anywhere from 10:00pm to 12:00am, or 4-6 hours per day. Plaintiff McDonald recalls Mastro's managers Roman, Phil, Kevin and Mike directing her job duties. For example, Plaintiff McDonald recalls Roman directing her on the time she needed to show up to work, told her she could not have books in the bathroom with her, directed her when to mop the floors, and told Plaintiff that she could not wear jeans.

31.     Plaintiff Serigne Saliou Faye is a resident of New York and was employed by Defendants at the Mastro's location in New York, New York. Plaintiff Faye was employed as a bathroom attendant from approximately 2018 through 2020. Plaintiff Faye typically worked 4-5 days per week and had a typical shift form 4:00pm to 11:00pm on weekdays and 4:00pm to 12:00pm on weekends. Plaintiff Faye typically worked between 28 and 37 hours per week. Plaintiff Faye recalls being directed by Mastro's manager Rob on how to perform her job duties. Plaintiff Faye was never paid any wages by Defendants for the work she performed. Plaintiff Faye only received tips left by customers.

32.     Plaintiff Douglas was employed by Defendants at the Mastro's location in Houston, Texas. Plaintiff Douglas was employed as a bathroom attendant from approximately September 2018 through June 2022. Plaintiff Douglas typically worked 4 days a week and had a typical shift from 5:00pm through 10:30pm. Plaintiff Douglas typically worked 24 hours a week. Plaintiff Douglas recalls being directed by Manager Nick Burback. Plaintiff was not paid any monies for the services he performed by Defendants, until approximately March 2022.

33. Plaintiff Salih Qawi was employed by Defendants at the Mastro's location in Boston, Massachusetts. Plaintiff Qawi was employed as a bathroom attendant from approximately September 2019 through June 2022. Prior to March 2022 Plaintiff Qawi was not paid any monies from Defendants for the services he performed. Plaintiff Qawi typically worked 4 days a week from approximately 5:00pm to 10:30pm. Plaintiff Qawi typically worked 22 hours per week. Plaintiff Qawi recalls being directed by a manager Peter on how to perform his duties.

34. Plaintiff George Trent is a resident of the District of Columbia and was employed by Defendants at the Mastro's location in Washington, D.C. Plaintiff Trent was employed as a bathroom attendant from approximately December 2016 through February 2020. Plaintiff Trent typically worked 4 days a week from approximately 5:30pm to 10:30pm, or 20 hours per week. Plaintiff Trent only received tips left by customers.

35. Plaintiff Stuart Tanner was employed by Defendants at the Mastro's location in Scottsdale, Arizona. Plaintiff Tanner was employed as a bathroom attendant from approximately November 2021 through March 2022. Plaintiff Tanner typically worked 4 nights a week from approximately 5:00pm to 10:00pm, or 20 hours per week. Plaintiff Tanner recalls a manager named Mike who would instruct him on how to perform his duties. Plaintiff Tanner only received tips left by customers.

36. Upon information and belief, Defendant Fertitta Entertainment, is a domestic business corporation, with a principal place of business located at 1510 West Loop S, Houston, TX 77027-9505, and is engaged in the restaurant business.

37. Upon information and belief, Defendant Landry's Inc. is a domestic business corporation, with a principal place of business located at 1510 West Loop S, Houston, TX 77027-

9505, and is engaged in the restaurant business.

38.     Upon information and belief, Defendant McCormick & Schmick Restaurant Corp., d/b/a Mastro's Steakhouse, is a foreign business corporation, with a principal place of business located at 1285 Avenue of the Americas, New York, New York 10019, and is engaged in the restaurant business. Defendant McCormick & Schmick may be served with process by serving Steven L. Scheinthal at 1510 West Loop South, Houston, TX 77027.

39.     Upon information and belief, Defendant Even Par LLC, is a foreign business corporation, with a principal place of business located at 8852 E. Pinnacle Peak Road, Scottsdale, AZ 85255, and is engaged in the restaurant business.

40.     Upon information and belief, Even Par LLC is a part of the boarder Mastro's Steakhouse umbrella and is the individual entity established to operate the Mastro's Steakhouse North Scottsdale.

41.     Upon information and belief, Defendant Mastro's Restaurants, LLC, is a foreign business corporation, with a principal place of business located at 3000 NE 32nd Avenue, Fort Lauderdale, Florida, 33308, and is engaged in the restaurant business. Defendant Mastro's Restaurants, LLC may be served with process at C T Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201-3136.

42.     Upon information and belief, Mastro's Restaurants, LLC is part of the broader Mastro's Steakhouse umbrella and is the individual entity established to operate the Mastro's Ocean Club Fort Lauderdale.

43.     Defendants Tilman J. Fertitta, Steven Lee Scheinthal, and Richard Holden Liem,

have held themselves out as officers and operators of the defendant entity Even Par LLC. Public records indicate that Defendant Fertitta is the President and Chief Executive Officer, Defendant Scheinthal is the Secretary, and Defendant Liem is an officer of that defendant entity.

44.    Upon information and belief, Defendant Mastro's Restaurants, LLC, is a foreign business corporation, with a principal place of business located at 3000 NE 32nd Avenue, Fort Lauderdale, Florida, 33308, and is engaged in the restaurant business.

45.    Upon information and belief, Mastro's Restaurants, LLC is part of the broader Mastro's Steakhouse umbrella and is the individual entity established to operate the Mastro's Ocean Club Fort Lauderdale.

46.    Defendants Tilman J. Fertitta, Steven Lee Scheinthal, and Richard Holden Liem, have held themselves out as officers and operators of the defendant entity Mastro's Restaurants, LLC. Public records indicate that Defendant Fertitta is the President and Chief Executive Officer, Defendant Scheinthal is the Secretary, and Defendant Liem is an officer of that defendant entity.

47.    Upon information and belief, Mastro's Houston LLC, is a domestic business corporation, with a principal place of business located at 1650 W. Loop S, Houston Taxes 77027, and is engaged in the restaurant business. Upon information and belief, Mastro's Houston LLC is part of the broader Mastro's Steakhouse umbrella and is the individual entity established to operate the Mastro's Steakhouse Houston. Defendants Tilman J. Fertitta, Steven Lee Scheinthal, and Richard Holden Liem, have held themselves out as officers and operators of the defendant entity Mastro's Houston LLC. Public records indicate that Defendant Fertitta is the President and Chief Executive Officer, Defendant Scheinthal is the Secretary, and Defendant Liem is an officer of that defendant entity.

48.     Upon information and belief Defendant Tilman J. Fertitta, Steven Lee Scheinthal, and Richard Holden Liem ("Individual Defendants") held themselves out as having control and authority over the restaurant facility commonly known as "Mastro's Steakhouse" and the work performed in those locations.

49.     The Individual Defendants are the operators of the establishment known as "Mastro's Steakhouse."

50.     Upon information and belief, Defendant Tilman J. Fertitta is a resident of Texas and maintains his place of business at 1510 West Loop S, Houston, TX 77027-9505.

51.     Defendant Fertitta is, and at all relevant times was, an officer, director, president, vice president, and or owner of Fertitta Entertainment Inc, the chairman of Landry's Inc, and the CEO of McCormick & Schmick Restaurant Corp., Even Par LLC, Mastro's Restaurants, LLC, and Mastro's Houston LLC.

52.     Defendant Fertitta has held himself out publicly as the face, manager, and operator of the Mastro's chain, including Mastro's Steakhouse. For example, Defendant Fertitta was quoted as saying, "Mastro's is probably the most successful steakhouse in every city that it's in… If it's not number one, it's number two." Then went further to state, "You've got to understand. I operate from the old school. It's all about the customers and hospitality, and there are no spare customers. How can I do something like that."[1]

53.     Defendant Fertitta has held himself out publicly that Mastro's Steakhouse is his hospitality business, he operates them, and he sets the policies in place over the location.

---

[1] https://houston.culturemap.com/news/restaurants-bars/06-04-21-mastros-ocean-club-the-woodlands-new-restaurant-tilman-fertitta-interview

54.     In a 2018 press release, Mastro's Steakhouse announced that, "Tilman Fertitta opens world renowned Mastro's Steakhouse in Houston."[2] In that same press release, Mastro's Steakhouse represented that "Fertitta owns and operates all Mastro's Steakhouse's [sic]"

55.     According to a post on Indeed.com by a worker at Mastro's Steakhouse in Houston, TX, who detailed direct interactions with Defendant Fertitta, including that, "If you work in this industry, you should know [Fertitta's] reputation and he is worse in person than advertised. You can lose your job at any moment…"[3]

56.     Defendant Fertitta exercises control over the workers and work performed at the various Mastro's Steakhouse locations.

57.     According to Mastro's Steakhouse and Defendant himself, Defendant Fertitta is the owner and operator of the facility in which Plaintiff performed work.

58.     Defendant Fertitta refers to Mastro's Steakhouse as "my restaurant" and its workers as "my employees".

59.     Upon information and belief, Defendant Steven Lee Scheinthal is a resident of Texas and maintains his place of business at 1510 West Loop S, Houston, TX 77027-9505. Defendant Scheinthal is, and at all relevant times was, a director, treasurer, secretary, vice president, and or owner of Fertitta Entertainment Inc, director of Landry's Inc, director of McCormick & Schmick Restaurant Corp. and the secretary of Even Par LLC, Mastro's Restaurants, LLC, and Mastro's Houston LLC.

---

[2] https://www.landrysinc.com/-/media/files/press-releases/landrysinc/2018/mastros_houston_opening_press_release.pdf
[3] https://www.indeed.com/cmp/Mastro's-Steakhouse/reviews

60.     Defendant Scheinthal regularly speaks on behalf of Mastro's Steakhouse and its corporate entities – and Defendant Fertitta.

61.     Defendant Scheinthal holds himself out as an individual with authority to speak and act on behalf of the corporate entities including those that operate Mastro's Steakhouse in New York.

62.     Upon information and belief, Defendant Richard Holden Liem is a resident of Texas and maintains his place of business at 1510 West Loop S, Houston, TX 77027-9505. Defendant Liem is, and at all relevant times was, an officer, vice president, treasurer, and or owner of Fertitta Entertainment Inc and CFO of Landry's Inc. and an officer of Even Par LLC, Mastro's Restaurants, LLC, and Mastro's Houston LLC.

63.     Defendant Liem holds himself out as having control over or speaking on behalf of corporate entities owned or operated by Defendant Fertitta.[4]

64.     The Individual Defendants jointly control, manage, and operate the corporate entity Fertitta Entertainment Inc as directed by Defendant Fertitta, which owns and operates the entire Mastro's Steakhouse umbrella.

65.     The Individual Defendants hold themselves out to various entities, including Texas, Arizona, Florida, Illinois, New York, Massachusetts, and California as the operators of the hospitality establishment known as Mastro's Steakhouse.

66.     Upon information and belief, Defendants jointly operated, managed, and controlled the restaurant and bar commonly known as Mastro's Steakhouse and are considered joint

---

[4] *See e.g.*, https://www.sec.gov/Archives/edgar/data/1815737/000121390021035185/ea143612ex99-1_fastacq.htm

employers under the FLSA and New York law.

67.     The Individual Defendants are employers under the various state and local wage and hour laws that govern the payment of wages, including unpaid minimum wage and unpaid overtime.

68.     Upon information and belief, the Individual Defendants are the primary shareholders of the corporate Defendant and are personally liable for violations of the FLSA, New York, Florida, Arizona, Massachusetts, Florida, and similar wage laws.

69.     Defendant Fertitta publicly represents his primary and substantial ownership of Fertitta Entertainment Inc., which in turn operates Mastro's Steakhouse and its corporate entities.[5]

70.     While working for Defendants, Plaintiffs were regularly required to perform work for Defendants, without receiving proper minimum wages and overtime as required by applicable federal law and state law as well as state violations including failure to provide proper wage notices and paystubs and failure to pay all wages and illegal deduction under New York Law.

71.     Prior to the filing of this matter, the Plaintiffs and the corporate defendants entered into a tolling agreement which was effective August 1, 2022 through November 30, 2022 as to the FLSA and New York Labor Law Claims and September 14, 2022 through November 30, 2022 for the other state law wage claims in Arizona, the District of Columbia, Florida, and Massachusetts.

---

[5] https://www.tilmanfertitta.com/ (explaining that he is the sole owner and CEO of Fertitta Entertainment, Inc. which owns Landry's. Inc. of which Mastro's Restaurants is a featured brand).

## FIRST CAUSE OF ACTION AGAINST DEFENDANTS:
## <u>FEDERAL MINIMUM WAGE</u>

72.     Plaintiffs repeat and re-allege the allegations set forth in the preceding paragraphs.

73.     Plaintiffs are "employees" as that term is defined by 29 U.S.C. § 203(e)(1) including case law on the same.

74.     Defendants are "employers" as that term is defined by 29 U.S.C. § 230(d) including case law on the same.

75.     Defendants' managers, directors, supervisors, and agents, had direct control over Plaintiffs in the performance of their duties, including the authority to make decisions on hiring and firing, setting the schedules of Plaintiffs, setting dress codes, and how Plaintiffs interact with customers.

76.     Pursuant to FLSA, 29 U.S.C. § 206 (1)(C), the applicable federal minimum wage is, and has been during the relevant period, $7.25 per hour.

77.     Here, Plaintiffs were not paid any wages for hours worked at Defendants' Maestro's restaurants and therefore Defendants did not provide them with at least minimum wage of $7.25 per hour.

78.     Plaintiffs worked at various Mastro's locations throughout the United States, including locations in Arizona, Texas, Florida, and New York.

79.     Plaintiffs, and similarly situated workers at these locations, were never paid any wages from Defendants and only received tips from customers.

80.     Plaintiffs received zero in wages from any Defendant during their tenure at Mastro's restaurant locations.

81.     Employers are entitled to take a tip credit against the federal minimum wage under

§ 203(m) of the FLSA, but in order to do so must ensure that certain conditions have been met, including that the employer must inform the employee of the tip credit provision of the FLSA.

82.    Here, Plaintiffs were not informed by Defendants of the tip credit provision of the FLSA.

83.    Here, Defendants failed to report and provide notice of the tip credit – or report any wages whatsoever for Plaintiffs – so Defendants were ineligible to claim a tip credit under the FLSA.

84.    Accordingly, Defendants did not meet the requirements to entitle them to take a tip credit against their employees' wages.

85.    Some nights Plaintiffs did not receive enough in tips to equal $7.25 per hour. For example, Plaintiff Jackson recalls times while working at the Florida and New York restaurants in which he would work a full seven-hour shift and only receive about $20-$30 in tips. This falls far below the minimum wage requirement, which for a seven-hour shift would be at least $50.75. Plaintiff Ingram also recalls nights (typically Monday and Tuesday shifts) when she would work shifts and make only $20.00 or less for the night. Even on nights where Plaintiff Ingram only worked 4 hours this still fell well below the minimum wage.

86.    Therefore, because Plaintiffs received an hourly rate of less than $7.25 per hour and have violated the tip credit notice requirements, Defendants have violated the FLSA and are liable to Plaintiffs in an amount to be determined at trial, plus liquidated damages, interest, attorneys' fees and costs.

## SECOND CAUSE OF ACTION AGAINST DEFENDANTS:
## <u>NEW YORK MINIMUM WAGE</u>
### (New York Plaintiffs)

87.     The New York Plaintiffs (Plaintiff Fatara, Plaintiff Badia, Plaintiff Jamison, Plaintiff Jackson, and Plaintiff Faye) repeat and re-allege the allegations set forth in the preceding paragraphs.

88.     Title 12 NYCRR § 146-1.1 required that "[e]very employer in the hospitality industry must pay to each employee…the minimum wage rates provided in this part." Title 12 NYCRR § 146-1.2 dictates that basic minimum hourly rate based on the nature of the employer, the size of the employer, and the physical location of the employer.

89.     Defendants are "employers", "operators of the establishment", "large employers" as that term is defined by the New York Labor Law and the Hospitality Wage Order.

90.     As a large employer within New York City, Defendants were thus required to pay the Plaintiff $15.00 per hour beginning on Dec. 31, 2018.

91.     Plaintiffs are employees at that term is defined by the New York Labor Law and the Hospitality Wage Order.

92.     Labor Law § 663 provides that, "[i]f any employee is paid by his employer less than the wage to which he is entitled under the provisions of this article, he may recover in a civil action the amount of any such underpayments, together with costs and such reasonable attorney's fees."

93.     The minimum wage provisions of Article 6 and Article 19 of the Labor Law and the supporting New York State Department of Labor regulations including the Hospitality Wage Order apply to Defendants and protect the New York Plaintiffs.

94.     Defendants failed to pay all New York Plaintiffs minimum wages for all hours worked, in violation of Title 12 NYCRR §§ 146-1.1, 146-1.2 and Labor Law § 663.

95.     The New York Plaintiffs were not compensated with any wages during their employment. The only money received by the New York Plaintiffs was from tips left by customers.

96.     As detailed above, the Plaintiff Fatara, Plaintiff Badia, Plaintiff Jamison, Plaintiff Jackson, and Plaintiff Faye received only the tips that they were entitled to.

97.     Defendants were ineligible to claim a tip credit under 12 NYCRR § 146-1.3 as to the New York Plaintiffs because (i) they failed to notify them, (ii) they failed to provide them with proper notice as required under that section and § 146-2.2, and (iii) they failed to ensure that they received all the tips they were owed.

98.     Plaintiffs also failed to receive enough in tips to equal the minimum wage on some of their shifts working at Defendants' Mastro's restaurant locations. For example, Plaintiff Jackson recalls working a seven hour shift at the New York Restaurant and only receiving $20-$30 in tips. This falls well below the minimum wage, which even at its lowest point in 2017 would be at least $77.00.

99.     By the foregoing reasons, Defendants have violated Title 12 NYCRR §§ 146-1.1, 146-1.2 and Labor Law § 663, and are liable to the New York Plaintiffs in an amount to be determined at trial, plus damages, interest, attorneys' fees and costs.

100.    Defendants' failure to pay any wages to the New York Plaintiffs was willful.

101.    The Individual Defendants are personally liable for these violations, even if they are not deemed to be "employers" under the statutory provisions and case law, because they are shareholders or managers of the corporate entities.

## THIRD CAUSE OF ACTION AGAINST DEFENDANTS:
## <u>FAILURE TO PAY FEDERAL OVERTIME</u>

102.     The FLSA Overtime Plaintiffs (Plaintiff Fatara, Plaintiff Badia, and Plaintiff Jackson) repeat and re-allege the allegations set forth in the preceding paragraphs.

103.     Defendants are employers within the meaning contemplated pursuant to 29 U.S.C. § 203(d) and case law interpreting the same.

104.     Defendants are employers of the FLSA Overtime Plaintiffs and of all other similarly situated individuals.

105.     Pursuant to 29 U.S.C. § 207, "no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty [40] hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

106.     Plaintiff Fatara worked at the New York, New York Mastro's location from September 2017 through December 2017, and September 2019 through October 2019. At the New York location Plaintiff Fatara typically worked seven days a week and between 49 and 52.5 hours per week. Plaintiff Fatara was never paid any wages from Defendants including a premium for hours worked over 40.

107.     Plaintiff Badia worked at the New York, New York location form September 2017 through December 2017 and September 2019 through November 2019. At the New York location Plaintiff Badia typically worked seven days a week from approximately 5:00pm through 11:30pm or 45.5 hours per week.

21

108.    Plaintiff Jackson worked at the New York, New York location from approximately March 2017 through January 2018 & April 2018 through April 2019. Plaintiff Jackson typically worked seven days a week from approximately 4:30pm to 11:30pm or about 49 hours per week.

109.    Consequently, by failing to pay the FLSA Overtime Plaintiffs all their earned overtime compensation, Defendants violated 29 U.S.C. § 207.

110.    Upon information and belief, Defendants' failure to pay overtime compensation was willful.

111.    By the foregoing reasons, Defendants have violated 29 U.S.C. § 207, and are liable to the FLSA Overtime Plaintiffs in an amount to be determined at trial, plus liquidated damages, interest, attorneys' fees, and costs.

## FOURTH CAUSE OF ACTION AGAINST DEFENDANTS:
### FAILURE TO PAY NEW YORK OVERTIME
#### (New York Overtime Plaintiffs)

112.    The New York Overtime Plaintiffs (Plaintiff Fatara, Plaintiff Badia, and Plaintiff Jackson) repeat and re-allege the allegations set forth in the preceding paragraphs.

113.    The provisions of NYLL Articles 6 and 19, and the supporting New York State Department of Labor regulations, including 12 NYCRR Part 146, apply to Defendants and protect the New York Overtime Plaintiffs.

114.    Defendants are "employers," within the meaning contemplated pursuant to NYLL Article 6 § 190(3), NYLL Article 19 § 651(6), 12 NYCRR Part 146, and cases interpreting same.

115.    The New York Overtime Plaintiffs are "employees," within the meaning contemplated pursuant to NYLL Article 6 § 190(2), NYLL Article 19 § 651(5), 12 NYCRR § 146-

3.2, and cases interpreting same.

116.    For example, Defendants controlled the manner and method in which the New York Overtime Plaintiffs carried out their job duties. For example, the New York Overtime Plaintiffs have identified at least four individuals that directed the work of the New York Overtime Plaintiffs, including Rob, Greg, Jetnir, and Vladimir.

117.    Pursuant to 12 NYCRR § 146-1.2(a)(1)(ii), "[t]he basic minimum hourly rate … shall be: $10.00 per hour on and after December 31, 2016, $11.00 per hour on and after December 31, 2017, $12.00 per hour on and after December 31, 2018, $13.00 per hour on and after December 31, 2019, $14.00 per hour on and after December 31, 2020, $15.00 per hour on and after December 31, 2021."

118.    Pursuant to 12 NYCRR § 146-1.4, "[a]n employer shall pay an employee for overtime at a wage rate of 1½ times the employee's regular rate for hours worked in excess of 40 hours in one workweek."

119.    Here, the New York Overtime Plaintiffs regularly worked in excess of 40 hours per week, yet Defendants failed to compensate her at an overtime rate of one and one-half times their regular rate of pay for all hours worked in excess of 40 in a given week.

120.    For example, in 2017, Plaintiff Fatara typically worked seven days a week for approximately 7 to 7.5 hours per day (4:30pm through 11:30pm-12:00am). Plaintiff Fatara typically worked between 49 and 52.5 hours per week.

121.    Plaintiff Badia worked at the New York, New York location form September 2017 through December 2017 and September 2019 through November 2019. Plaintiff Badia typically worked seven days a week from approximately 5:00pm through 11:30pm or 45.5 hours per week.

23

122.     Plaintiff Jackson worked at the New York, New York location from approximately March 2017 through January 2018 & April 2018 through April 2019. Plaintiff Jackson typically worked seven days a week from approximately 4:30pm to 11:30pm or about 49 hours per week.

123.     Given that the minimum wage rate in 2017, 2018, and 2019 was $11.00, $13.00 and $15.00 per hour, the minimum legal overtime rate during such time was $16.50, $19.50, and $22.50 per hour respectively.

124.     The New York Overtime Plaintiffs were not paid any wages from Defendants throughout the entirety of their employment, except for tips received directly from Defendant's customers.

125.     NYLL Article 19 § 663 provides that, "[i]f any employee is paid by his employer less than the wage to which he is entitled under the provisions of this article, he may recover in a civil action the amount of any such underpayments, together with costs and such reasonable attorney's fees."

126.     Upon information and belief, Defendants' failure to pay overtime compensation was willful.

127.     By the foregoing reasons, Defendants have violated 12 NYCRR § 146-1.4 and NYLL Article 19 § 663 and are liable to the New York Overtime Plaintiffs in an amount to be determined at trial, plus liquidated damages, interest, attorneys' fees, and costs.

**FIFTH CAUSE OF ACTION AGAINST DEFENDANTS:**
**WAGE THEFT NOTICE**
**(New York Plaintiffs)**

128.     The New York Plaintiffs repeat and re-allege the allegations set forth in the preceding paragraphs.

24

129.     Pursuant to Labor Law Article 6 § 195(1)(a), "every employer shall: provide his or her employees, in writing in English and in the language identified by each employee as the primary language of such employee, at the time of hiring, a notice containing the following information: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary. Each time the employer provides such notice to an employee, the employer shall obtain from the employee a signed and dated written acknowledgement, in English and in the primary language of the employee, of receipt of this notice…. For all employees who are not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation, the notice must state the regular hourly rate and overtime rate of pay."

130.     NYLL § 195(3) requires an employer such as Defendants to "furnish each employee with a statement with every payments of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages. For all employees who are not exempt from overtime

compensation as established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation, the statement shall include the regular hours worked, and the number of overtime hours worked…"

131.    Here, the New York Plaintiffs did not receive a notice in writing within ten business days of their first day of employment – or at any time thereafter – listing all required information, including the rates at which they were to be compensated and their regular pay day as designated by Defendants. This is commonly referred to as "time of hire" notice.

132.    The New York Plaintiffs did not receive proper pay stubs. This is commonly referred to as "paystub" notice.

133.    The New York Plaintiffs did not receive any checks or form of payment from Defendants, or any documents designating a rate of pay.

134.    The New York Plaintiffs only received tips directly from patrons at Defendants' restaurant.

135.    Labor Law § 198 provides for statutory damages for both the "time of hire" notice and the "paystub" notice up to the statutory cap.

136.    By the foregoing reasons, Defendants have violated Labor Law Article 6 § 195 and are liable to The New York Plaintiffs in an amount to be determined at trial, plus damages, interest, attorneys' fees and costs.

137.    The Individual Defendants are personally liable for these violations, even if they are not deemed to be "employers" under the statutory provisions and case law, because they are shareholders or managers of the corporate entities.

**SIXTH CAUSE OF ACTION AGAINST DEFENDANTS:**
**FAILURE TO PAY WAGES & ILLEGAL DEDUCTIONS**
**(New York Plaintiffs)**

138.    The New York Plaintiffs repeat and re-allege the allegations set forth in the preceding paragraphs.

139.    Pursuant to NYLL Article 6, workers such as the New York Plaintiffs are protected from wage underpayments and improper employment practices.

140.    Pursuant to NYLL § 191 and the cases interpreting same, workers such as the New York Plaintiffs are entitled to be paid all their weekly wages "not later than seven calendar days after the end of the week in which the wages are earned."

141.    During the New York Plaintiff's employment with Defendants, Defendant regularly failed to pay the New York Plaintiffs any earned wages, by failing to provide pay for all hours worked.

142.    Plaintiff Fatara typically worked between 49 and 52.5 hours per week at the New York Mastro's location and was never paid any compensation from Defendants. The only money Plaintiff Fatara ever received was tips left by Defendants customers.

143.    Plaintiff Jackson typically worked approximately 49 hours per week and was never paid any compensation from Defendants. The only money Plaintiff Jackson ever received was tips left by Defendants customers.

144.    Plaintiff Badia typically worked 45.5 hours per week and was never paid any compensation or wages from Defendants. The only money Plaintiff Badia ever received was tips left by Defendants customers.

145.    Plaintiff Jamison typically worked 30 hours per week and was never paid any

compensation or wages from Defendants. The only money Plaintiff Jamison ever received was tips left by Defendants customers.

146.    Plaintiff Faye typically worked between 28-37 hours per week and was never paid any compensation or wages from Defendants. The only money Plaintiff Faye ever received was tips left by Defendants customers.

147.    Upon information and belief, all other New York Plaintiffs were compensated in the same manner.

148.    In failing to pay the New York Plaintiffs for all earned wages, Defendants violated NYLL § 191.

149.    Pursuant to NYLL § 193, "No employer shall make any deduction from the wages of an employee," such as the New York Plaintiffs, that is not otherwise authorized by law or by the employee.

150.    By withholding wages from the New York Plaintiffs pursuant to NYLL § 193 and the cases interpreting same, Defendants made unlawful deductions.

151.    By requiring the New York Plaintiffs to pay for their own products including mouthwash, gum, and other items that needed to be available in the bathroom, Defendants illegally deducted wages from the New York Plaintiffs.

152.    By the foregoing reasons, pursuant to NYLL § 198, Defendants are liable to the New York Plaintiffs in an amount to be determined at trial, plus interest, damages, and attorneys' fees and costs.

153.    The Individual Defendants are personally liable for these violations, even if they are not deemed to be "employers" under the statutory provisions and case law, because they are

shareholders or managers of the corporate entities.

## SEVENTH CAUSE OF ACTION AGAINST DEFENDANTS:
## <u>ARIZONA MINIMUM WAGE</u>
### (Arizona Plaintiffs)

154.    The Arizona Plaintiffs (Plaintiff James Muhammad, Plaintiff Stuart Tanner, Plaintiff Patricia McDonald, Plaintiff Lateef Muhammad, Plaintiff Curtis Jackson, and Plaintiff Ahmad Muhammad) repeat and re-allege the allegations set forth in the preceding paragraphs.

155.    Pursuant to Arizona Wage laws, Arizona Revised Statutes 23-363(A) "employers shall pay employees no less than the minimum wage, which shall be not less than: $10.00 on and after January 1, 2017, $10.50 on and after January 1, 2018, $11.00 on and after January 1, 2019, $12.00 on and after January 1, 2020. Section (B) provides "the minimum wage shall be increased on January 1, 2021 and on January 1 of successive years, by the increase in the cost of living.

156.    Defendants are employers under A.R.S 23-362(B) which defines "employer as any corporation, proprietorship, partnership, joint venture, limited liability company, trust, association, political subdivision of the state, individual or other entity acting directly or indirectly in the interest of an employer in relation to an employee…" A.R.S. 23-362(A) "Employee is defines as any person who is or was employed by an employer…"

157.    A.R.S. 23-364(G) provides in part that "Any employer who fails to pay the wages or earned paid sick time required under this article shall be required to pay the employee the balance of the wages or earned paid sick time owed, including interest thereon, and an additional amount equal to twice the underpaid wages or earned paid sick time."

158.    Defendants failed to pay the Arizona Plaintiffs minimum wage for all hours worked, in violation of Arizona Wage laws, A.R.S. Title 23 Article 8.

159.    As detailed above, the Arizona Plaintiffs were employees of the Arizona Mastro's locations and received only the tips that they were entitled to from customers.

160.    The Arizona Plaintiffs generally recall being directed in their job performance by Defendants' agents such as managers Roman, Phil, Kevin and Mike.

161.    Defendants were ineligible to claim a tip credit under A.R.S. 23-363(C) as to the Arizona Plaintiffs because they did not receive minimum wage payments up to three dollars less than the minimum wage.

162.    By the foregoing reasons, Defendants have violated Arizona Wage laws, A.R.S. Title 23 Article 8, and are liable to the Arizona Plaintiffs in an amount to be determined at trial, plus damages, interest, and attorneys' fees and costs.

163.    Defendants' failure to pay any wages to the Arizona Plaintiffs was willful.

**EIGHTH CAUSE OF ACTION AGAINST DEFENDANTS:**
**FLORIDA MINIMUM WAGE**
**(Florida Plaintiffs)**

164.    The Florida Plaintiffs (Plaintiff Badia Muhammad, Plaintiff James Muhammad, and Plaintiff Fatara Muhammad) repeat and re-allege the allegations set forth in the preceding paragraphs.

165.    Pursuant to Florida Wage laws, Florida Statue Title XXXI Chapter §448.110, employers shall pay employees a minimum wage at an hourly rate for all hours worked in Florida.

166.    Defendants are employers pursuant to Florida Statute § 448.101(3) which provides an employer means "any private individual, firm partnership, institution, corporation, or association that employs ten or more persons." §448.101(2) further provides that an employee means" a person who preforms services for and under the control and direction of an employer for

wages or other remuneration."

167.    Florida Statute § 448.110(6)(a) provides that "any person aggrieved by a violation of this section may bring a civil action in a court of competent jurisdiction against an employer violating this section or a party violating subsection" § 448.110(6)(c) further provides "upon prevailing in an action brought pursuant to this section, aggrieved persons shall recover the full amount of any unpaid back wages unlawfully withheld plus the same amount as liquidated damages and shall be awarded reasonable attorney's fees and costs."

168.    The Florida Plaintiffs satisfied the notice requirement of § 448.110(6)(a) via confidential settlement negotiations with Defendants' counsel.

169.    Defendants failed to pay the Florida Plaintiffs minimum wage for all hours worked, in violation of, Florida Wage laws, Florida Statute § 448.110.

170.    As detailed above, the Florida Plaintiffs were employees of Defendants at the Florida Mastro's location and received only the tips that they were entitled to from customers.

171.    The Florida Plaintiffs generally recall being directed in their performance of their duties by Defendants agents, including a manager named Nicole.

172.    By the foregoing reasons, Defendants have violated Florida Wage laws, Florida Statute § 448.110, and are liable to the Florida Plaintiffs in an amount to be determined at trial, plus damages, interest, and attorneys' fees and costs.

173.    Defendants' failure to pay any wages to the Florida Plaintiffs was willful.

**NINTH CAUSE OF ACTION AGAINST DEFENDANTS:**
**<u>DISTRICT OF COLUMBIA MINIMUM WAGE</u>**
**(District of Columbia Plaintiff)**

174.    The Washington D.C. Plaintiff (Plaintiff George Trent) repeats and realleges the

allegations set forth in the preceding paragraphs.

175.    The District of Columbia Wage laws, Code of the District of Columbia Title 32, Chapter 10 § 32-1003 and §32-1010, provides that an employer shall be required to pay its employees the relevant minimum wage.

176.    Defendants are employers pursuant to §32-1002 which provides an employer "includes the District of Columbia government, any individual, partnership, general contractor, subcontractor, association, corporation, business trust, or any person or group of persons acting directly or indirectly in the interest or an employer in relation to an employee." §32-1002 further provides that an employee "includes any individual employed by an employer".

177.    §32-1012(b)(1) provides that "…any employer who pays any employee less than the wage to which that employee is entitled under this subchapter shall be liable to that employee in the amount of the unpaid wages, statutory penalties, and an additional amount as liquidated damages equal to treble the amount of unpaid wages."

178.    Defendants failed to pay minimum wage for all hours worked by the Washington D.C. Plaintiff in violation of District of Columbia Wage laws.

179.    As detailed above the Washington D.C. Plaintiff was an employee of Defendants at the Washington D.C. Mastro's location and received only the tips that they were entitled to from customers.

180.    By the foregoing reasons, Defendants have violated District of Columbia Wage laws, and are liable to the Washington D.C. Plaintiff in an amount to be determined at trial, plus damages, interest, and attorneys' fees and costs.

181.    Defendants' failure to pay any wages to the Washington D.C. Plaintiff was willful.

## TENTH CAUSE OF ACTION AGAINST DEFENDANTS:
## <u>MASSACHUSETTS MINIMUM WAGE</u>
### (Massachusetts Plaintiffs)

182.   The Massachusetts Plaintiffs (Plaintiff James Muhammad and Plaintiff Salih Qawi) repeat and reallege the allegations set forth in the preceding paragraphs.

183.   Massachusetts Wage laws, Massachusetts General Law Title 21 Chapter 151 § 1, provides that "it is hereby declared to be against public policy for any employer to employ any person in an occupation in this commonwealth at an oppressive and unreasonable wage as defined in section two, and any contract agreement or understanding for or in relation to such employment shall be null and void."

184.   Chapter 151 § 20, provides "If a person is paid by an employer less than the minimum fair wage to which the person is entitled under or by virtue of a minimum fair wage regulation, or less than $1.85 per hour in a manufacturing occupation or in any other occupation not covered by a minimum fair wage regulation, the person may institute and prosecute in his own name and on his own behalf, or for himself and for others similarly situated, a civil action for injunctive relief, for any damages incurred and for the full amount of the minimum wages less any amount actually paid to him by the employer. An agreement between the person and the employer to work for less than the minimum wage shall not be a defense to such action. An employee so aggrieved who prevails in such an action shall be awarded treble damages, as liquidated damages, for any loss of minimum wage and shall also be awarded the costs of the litigation and reasonable attorneys' fees."

185.   Defendants failed to pay minimum wage for all hours worked by the Massachusetts Plaintiffs in violation of Massachusetts Wage laws, Chapter 151.

186.    As detailed above the Massachusetts Plaintiffs were employees of Defendants at the Boston Mastro's location and received only the tips that they were entitled to from customers.

187.    The Massachusetts Plaintiffs generally recall being directed by Defendants agents in their performance of their duties, including by a manager named Peter.

188.    By the foregoing reasons, Defendants have violated Massachusetts Wage laws, Massachusetts General Law Title 21 Chapter 151, and are liable to the Massachusetts Plaintiffs in an amount to be determined at trial, plus damages, interest, and attorneys' fees and costs.

189.    Defendants' failure to pay any wages to the Massachusetts Plaintiffs was willful.

**WHEREFORE**, Plaintiff seeks the following relief:

(1)    on the first cause of action against Defendants in an amount to be determined at trial, plus damages, interest, attorneys' fees and costs, pursuant to the cited FLSA and regulatory provisions;

(2)    on the second cause of action against the Defendants in an amount to be determined at trial, plus damages, interest, attorney's fees and costs, pursuant to the cited NYLL and regulatory provisions;

(3)    on the third cause of action against Defendants in an amount to be determined at trial, plus damages, interest, attorneys' fees and costs, pursuant to the cited FLSA and regulatory provisions;

(4)    on the fourth cause of action against the Defendants in an amount to be determined at trial, plus damages, interest, attorney's fees and costs, pursuant to the cited NYLL and regulatory provisions;

(5)    on the fifth cause of action against the Defendants in an amount to be determined

at trial, plus damages, interest, attorney's fees and costs, pursuant to the cited NYLL and regulatory provisions;

(6)     on the sixth cause of action against the Defendants in an amount to be determined at trial, plus damages, interest, attorney's fees and costs, pursuant to the cited NYLL and regulatory provisions; and

(7)     on the seventh cause of action against the Defendants in an amount to be determined at trial, plus damages, interest, attorney's fees and costs, pursuant to the cited Arizona Wage laws and regulatory provisions; and

(8)     on the eighth cause of action against the Defendants in an amount to be determined at trial, plus damages, interest, attorney's fees and costs, pursuant to the cited Florida Wage laws and regulatory provisions; and

(9)     on the ninth cause of action against the Defendants in an amount to be determined at trial, plus damages, interest, attorney's fees and costs, pursuant to the cited District of Columbia Wage laws law and regulatory provisions; and

(10)     on the tenth cause of action against the Defendants in an amount to be determined at trial, plus damages, interest, attorney's fees and costs, pursuant to the cited Massachusetts Wage laws and regulatory provisions; and

(11)     together with such other and further relief the Court may deem appropriate.

Dated:     Carle Place, New York
           March 16, 2023

EDWARDS LAW
603 W. 17th St
Austin, TX 78701
Tel. 512-623-7727
Fax. 512-623-7729

By:   */s/ Jeff Edwards*
Jeff Edwards
State Bar No. 24014406
jeff@edwards-law.com
David James
State Bar No. 24092572
david@edwards-law.com
Paul Samuel
State Bar No. 24124463
paul@edwards-law.com

&

 LEEDS BROWN LAW, P.C.
Jeffrey K. Brown*
Anthony M. Alesandro*
One Old Country Road, Suite 347
Carle Place, NY 11514
(516) 873-9550
jbrown@leedsbrownlaw.com
Aalesandro@leedsbrownlaw.com
*To seek admission Pro Hac Vice

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that this document has been electronically filed in the Court's case management system but has not been served as Defendants have not yet appeared. They will be promptly electronically served through counsel upon appearance of Defendants, or, if necessary, personal service pursuant to the Rules of Civil Procedure.

By: */s/ Jeff Edwards*
Jeff Edwards

36